**No. 25-13900**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**WENDY MIKELL**,

Plaintiff-Appellant,

v.

**POSTMASTER GENERAL,
U.S. POSTAL SERVICE**,

Defendant-Appellee.

On Appeal from the United States District Court
for the Southern District of Georgia

**BRIEF OF APPELEE
THE POSTMASTER GENERAL**

MARGARET E. HEAP
UNITED STATES ATTORNEY

Kyle P. McCauley
Attorney
United States Postal Service
475 L'Enfant Plaza, SW
Washington, D.C. 20260
(202) 268-2989

Channell V. Singh
Assistant United States Attorney
United States Attorney's Office
Post Office Box 8970
Savannah, GA 31401
(912) 652-4422

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not needed. The record and the parties' briefs adequately present the factual and legal issues necessary for disposition of this appeal. *See* Fed. R. App. P. 34(a)(2)(C).

**TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT ......................................i

TABLE OF CONTENTS .........................................................................ii

TABLE OF CITATIONS .......................................................................iv

STATEMENT OF JURISDICTION........................................................ 1

STATEMENT OF THE ISSUES............................................................. 2

STATEMENT OF THE CASE ................................................................ 3

    I.    Facts. .......................................................................................3

        A.    Mikell's Allegations from 2022 through 2024 ..............3

        B.    Mikell's First EEO Complaint (EEO Case No. 4G-300-0468-22) .......................................................................7

        C.    Mikell's Second EEO Complaint (EEO Case No. 4G-320-0010-24) .......................................................................9

    II.    Proceedings and Dispositions Below ...................................10

    III.    Standard of Review .............................................................. 13

SUMMARY OF ARGUMENT ............................................................. 14

ARGUMENT ...................................................................................... 16

    I.    The district court correctly found that the claims in Mikell's first EEO complaint are time-barred because she failed to file suit within 90 days and cannot revive the untimely claims by filing a duplicative EEO complaint ...................................... 16

II.     The district court correctly found that the untimely acts raised in Mikell's second EEO complaint are not sufficiently related to the timely acts to form a claim for hostile work environment because they occurred over a year apart and involve different supervisors and different policies ............. 23

III.    The district court correctly found that the timely acts raised in Mikell's Second Amended Complaint do not state a Hostile Work Environment Claim because she does not plausibly suggest that the alleged harassment was severe and pervasive or based on her race or gender ............................ 28

CONCLUSION ..................................................................................... 36

CERTIFICATE OF COMPLIANCE AND SERVICE ............................. 37

# TABLE OF CITATIONS

**Cases**                                                                     **Page(s)**

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010)..........13

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ....................................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................13

*Bergbauer v. Mabus*, 934 F.Supp.2d 55 (D.D.C. 2013)...........................31

*Brannon v. Sec'y, Dep't of Veterans Affs.*, No. 22-10838, 2023 WL 1161129 (11th Cir. Jan. 31, 2023)............................................................. 33, 35

*Brown v. Hartshorne Pub. Sch. Dist. No., 1,* 926 F.2d 959 (10th Cir. 1991)........................................................................................21, 22

*Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184 (10th Cir. 2006)..................................................................................19

*Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209 (11th Cir. 2008)....31, 32

*Caldwell v. Kimberly-Clark USA, LLC*, 783 F. Supp. 3d 1367 (S.D. Ala. 2024)........................................................................................25

*Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588 (9th Cir. 1992) ....................................................................................... 30, 31

*Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345 (11th Cir. 2007)24, 25, 28

*Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008) ........................33, 35

*Dawkins v. Fulton Cnty. Gov't, State of Ga.*, No. 10-CV-1718, 2012 WL 12892184 (N.D. Ga. Mar. 14, 2012)..................................................25

*D'Franco v. Fontainebleau Fla. Hotel, LLC,* No. 1:23-CV-22476-RAR, 2025 WL 906129 (S.D. Fla. Mar. 7, 2025), report and recommendation adopted, No. 23-CV-22476-RAR, 2025 WL 901371 (S.D. Fla. Mar. 25, 2025)........................................................................................25

*Dowdell v. Sunshine Biscuits, Inc.*, 90 F.R.D. 107, 115-16 (M.D. Ga. 1981), *aff'd* 673 F.2d 1343 (11th Cir. 1982) .............................................. 18, 19

*Duberry v. Postmaster Gen.*, 652 F. App'x 770 (11th Cir. 2016) ............. 16

*Duggins v. Steak 'N Shake, Inc.*, 3 F. App'x 302 (6th Cir. 2001) ............ 30

*Edwards v. Prime, Inc.*, 602 F.3d 1276 (11th Cir. 2010) ........................ 14

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ............................ 32

*Ferguson v. Runyon*, 116 F.3d 1482 (7th Cir. 1997) ............................... 17

*Freeman v. City Of Riverdale*, 330 F. App'x 863 (11th Cir. 2009) .......... 25

*Gibbs v. Gen. Motors Corp.*, 104 F. App'x. 580 (7th Cir. 2004) .............. 22

*Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012) ................................... 33

*Green v. Union Foundry Co.*, 281 F.3d 1229 (11th Cir. 2002) ................ 17

*Gupta v. Fla. Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000) .................. 35

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) .................................... 29

*Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296 (11th Cir. 2023) ................................................................................................ 29, 32

*Henriquez v. Georgia Dep't of Revenue*, No. 21-12567, 2023 WL 4624473 (11th Cir. July 19, 2023) ................................................................. 16

*Hogan v. Sec'y, U.S. Dep't of Veterans, Affs.*, 121 F.4th 172 (11th Cir. 2024) .............................................................................................. 16

*Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002) ...................................... 3

*Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972 (11th Cir. 2025) ................... 27

*Johnson v. Chicago Bd. of Educ.*, No. 05 C 4294, 2007 WL 317030 (N.D. Ill. Jan. 31, 2007) ........................................................................... 23

*Kernal Records Oy v. Mosley*, 694 F.3d 1294 (11th Cir. 2012) .............. 14

*King v. Ford Motor Co.*, 872 F.3d 833 (7th Cir. 2017) ............................ 19

*Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827 (2d Cir. 1986) ... 19, 20, 22

*Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139 (1st Cir. 2012). 21

*Mathirampuzha v. Potter*, 548 F.3d 70 (2d Cir. 2008) ............................ 17

*McCann v. Tillman*, 526 F.3d 1370 (11th Cir. 2008) ........................ 24, 25

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th Cir. 2002) 32, 33

*Miller v. N.H. Dep't of Corr.*, 296 F.3d 18 (1st Cir. 2002) ...................... 34

*Moore v. San Carlos Park Fire Prot. & Rescue*, 808 F. App'x 789 (11th Cir. 2020) .............................................................. 24, 33, 34

*Mosley v. MeriStart Mgmt. Co.*, 137 F. App'x 248 (11th Cir. 2005) ....... 32

*Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) .. 20, 24, 25, 33

*Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141 (E.D.N.Y. 2015) ................................................................. 31

*Porter v. California Dep't of Corr.*, 419 F.3d 885 (9th Cir. 2005) ........... 34

*Price v. Bernanke*, 470 F.3d 384 (D.C. Cir. 2006) ................................ 21

*Price v. Greenspan*, 374 F. Supp. 2d 177 (D.D.C. 2005) ........................ 21

*Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387 (1st Cir. 2014) ................................................................................... 19

*Robbins v. Vonage Bus., Inc.*, 819 F. App'x 863 (11th Cir. 2020) ........... 17

*Santini v. Cleveland Clinic Fla.*, 232 F.3d 823 (11th Cir. 2000) ............ 18

*Shiver v. Chertoff*, 549 F.3d 1342 (11th Cir. 2008) ............................... 16

*Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276 (11th Cir. 2018) .... 29

*Spears v. Mo. Dep't of Corrs. & Human Res.*, 210 F.3d 850 (8th Cir. 2000)................................................................................19

*Tonkyro v. Sec'y, Dep't of Veterans, Affs.*, 995 F.3d 828 (11th Cir. 2021) ................................................................................................32

*Wade v. Knoxville Utilities Bd.*, 259 F.3d 452 (6th Cir. 2001) ..............21

*Washington v. Washington Metro. Area Transit Auth.*, No. 21-7055, 2022 WL 2387525 (D.C. Cir. July 1, 2022)..........................................19

*Whipple v. Reed Eye Assocs.*, 524 F. Supp. 3d 76 (W.D.N.Y. 2021)........30

*Williams v. Paulson,* No. 1:06-CV-0876-CC-AJB, 2007 WL 9652983 (N.D. Ga. Dec. 24, 2007), report and recommendation adopted, No. 1:06-CV-0876-CC, 2008 WL 11336482 (N.D. Ga. Jan. 16, 2008), *aff'd sub nom. Williams v. Geithner*, 327 F. App'x 175 (11th Cir. 2009)....................34

**Statutes**

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1339 .......................................................................................1

42 U.S.C. § 2000e *et seq*....................................................................... 1, 10

42 U.S.C. § 2000e-5(e)(1).......................................................................20

42 U.S.C. § 2000e-5(f)(1) ................................................................. 17, 20

42 U.S.C. § 2000e-16(c) ..................................................................... 16, 17

42 U.S.C. § 2000e-16(d) ..........................................................................17

42 U.S.C. § 2000e-5(k) .............................................................................11

vii

**Rules**

11th Cir. R. 25-3(a) ..................................................................37

11th Cir. R. 28-5 .......................................................................1

Fed. R. App. P. 4(a)(1)(B) ..........................................................1

Fed. R. App. P. 25(c)(1)(C) ........................................................37

Fed. R. App. P. 25(c)(2) .............................................................37

Fed. R. App. P. 32(a)(5) .............................................................37

Fed. R. App. P. 32(a)(6) .............................................................37

Fed. R. App. P. 32(a)(7)(B) .........................................................37

Fed. R. App. P. 34(a)(2)(C) ..........................................................i

Fed. R. App. P. 43(c) ..................................................................1

Fed. R. Civ. P. 15(a)(1) .............................................................11

**Regulations**

29 C.F.R. § 1614.105 .................................................................17

29 C.F.R. § 1614.105(a)(1) ....................................................16, 20

29 C.F.R. § 1614.106(b) ............................................................16

29 C.F.R. § 1614.407 .................................................................16

## STATEMENT OF JURISDICTION

Mikell filed a complaint against the Postmaster General[1] under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Doc. 1.)[2] The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1339. The district court granted the Postmaster General's motion to dismiss (Doc. 42) and entered judgment on October 1, 2025. (Doc. 43.) Mikell filed a timely notice of appeal on October 30, 2025. (Doc. 44; Fed. R. App. P. 4(a)(1)(B).) This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1]    Doug Tulino formerly served as postmaster general. The current postmaster general is David Steiner. *See* Federal Rule of Appellate Procedure 43(c).

[2]    As required by this Court's Rule 28-5, citations to the record refer to the document and page number "that appears in the header generated by the district court's electronic filing system."

## STATEMENT OF THE ISSUES

1.    To exhaust administrative remedies under Title VII, an employee must file suit within 90 days of the agency's final decision. Can this Court consider any claims that were raised in Mikell's first Equal Employment Opportunity complaint for which she failed to file suit in district court within 90 days?

2.    To establish a Title VII hostile work environment based on timely discrete acts, Mikell must show that they are sufficiently related to untimely, non-discrete acts. Mikell's only timely, properly exhausted acts include an outside-the-workplace incident and letters instructing her to return to work and proposing her removal. Are these incidents sufficiently related to the untimely allegations, occurring years earlier and involving different supervisors and policies, such that the timely discrete acts can be considered part of the same hostile work environment claim?

3.    To establish a Title VII hostile work environment, Mikell must show that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and based on a protected characteristic. Can she make this showing based on a

2

USCA11 Case: 25-13900    Document: 21    Date Filed: 03/18/2026    Page: 12 of 47

single outside-the-workplace incident and letters directing her to return to work and proposing her removal?

## STATEMENT OF THE CASE

### I.    Facts.[3]

Mikell, a Caucasian female, was the postmaster at the Post Office in Alma, Georgia, during the events giving rise to this suit. Doc. 33, Second Amended Complaint ("SAC"), ¶ 10, 27, 33, 35)

### A.    Mikell's Allegations from 2022 through 2024

Mikell alleged that, on April 14, 2022, another Postal Service employee, Marlon Burton, verbally threatened her. (Doc. 33, ¶ 11.)

---

[3]    These are the facts as alleged in Mikell's Second Amended Complaint. Other facts are taken from documents integral to Mikell's Second Amended Complaint, including those attached to her Second Amended Complaint and the Postmaster General's Motion to Dismiss the Second Amended Complaint. *See Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002) ("A document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. Undisputed in this context means that the authenticity of the document is not challenged.") (internal citations and quotations omitted). Below, Mikell never objected to the inclusion of documents from her first EEO complaint, which was attached to the Postal Service's Motion to Dismiss the Second Amended Complaint.

3

Though Mikell contacted her supervisor, Nicholas James, after the incident, she alleged that James failed to immediately respond to the threat. *Id.* ¶ 12.[4] On April 15, James instructed Mikell to place Burton on emergency placement and to have law enforcement present when Burton was removed. (*Id.* ¶ 13.) Mikell requested law enforcement's assistance to remove Burton from the premises. (*Id.* ¶¶ 13–14.) James later claimed that Mikell placed Burton on emergency leave herself and called law enforcement to have him escorted from the premises. (*Id.* ¶ 14.) Investigations into both Burton and Mikell followed. (*Id.* ¶¶ 15–19.)

On April 19, a "Threat Assessment Committee" found that Burton ranked as the highest possible threat and directed Mikell to proceed with removal of Burton from the Postal Service. (*Id.* ¶¶ 15–16.) Around the same time, James ordered an Initial Management Inquiry Process against Mikell in response to the April 15, 2022, events. (*Id.* ¶ 17.) Though the Threat Assessment Committee directed James to suspend the Initial Management Inquiry Process, he did not. (*Id.* ¶¶ 17–19.)

---

[4] Burton and James are African American. *Id.* ¶¶ 42–43.

Instead, James initiated an internal investigation into Mikell's management of the Alma Post Office. (*Id.* ¶ 19.)

James threatened Mikell with an "EEO action" if she would not resolve the dispute with Burton. (*Id.* ¶ 18.) He also directed Mikell to have Burton return to work and told her that failure to do so could lead to her removal from the Postal Service. (*Id.* ¶ 20.) Mikell complied, and Burton returned to the Alma Post Office on May 26, 2022. (*Id.* ¶¶ 21–22.) The next day, Burton threatened Mikell with his fist. (*Id.* ¶¶ 22–23.) Mikell reported Burton's behavior to James and Sonya Miley, the Manager of Post Office Operations. (*Id.* ¶ 24.)

In June 2022, Mikell was placed on emergency placement. (*Id.* ¶¶ 24–26.) Miley informed Mikell that the placement was due to Mikell's creation of a "hostile work environment." (*Id.* ¶ 25.) The letter informing Mikell of the placement reported, however, that the action was the result of an "altercation with a city carrier." (*Id.* ¶ 26.) Mikell has never returned to work at the Postal Service. (*Id.* ¶ 27.)

Over a year later, on September 23, 2023, Burton confronted Mikell at an ATM machine outside the workplace. (*Id.* ¶ 28; Doc. 33-1 at 4.) Then, on January 25, 2024, the Postal Service sent Mikell a letter

directing her to return to work. (Doc. 33, ¶ 30.)[5] On October 16, 2024, Mikell received another letter, issued by Donald Johnson, the Manager of Post Office Operations, proposing her removal from the Postal Service because she refused to return to work. (*Id.* ¶ 31; Doc. 33-4.)[6]

The letter explained that Mikell had been absent without providing supporting medical documents since May 3, 2024 through October 4, 2024, and failed to report for three investigative interviews. (Doc. 33-4 at 1.) When Mikell informed Johnson in April 2024 about her issues with the Alma Post Office, he arranged for her to fill a temporary position at a different location, beginning in May 2024. (*Id.* at 2.) Despite this accommodation, Mikell still declined to report to work. (*Id.*) In fact, she refused multiple directives from the Postal Service to return to work. (*Id.* at 1–2.) For months, Johnson tried to obtain Mikell's version of events for his investigation, but she refused to participate in any of the investigative

---

[5]    The January 25, 2024, letter was sent after Mikell contacted the Postal Service's EEO office on October 20, 2023, but was raised in her second formal complaint. (*See* Doc. 28-1 at 4).

[6]    The October 16, 2024 notice of proposed removal was not raised in Mikell's second formal EEO complaint and was issued after this case was filed in district court. Mikell included the notice of proposed removal  as an attachment to her second amended complaint. (*See* Doc. 33-4).

interviews in May, June, and August 2024. (*Id.* at 2–3.) Since she would neither explain her long-term absences from work nor report to work, Johnson initiated Mikell's removal from the Postal Service for unsatisfactory attendance, failure to follow leave requesting procedures, and failure to follow instructions. (*Id.* at 1.)

## B.    Mikell's First EEO Complaint (EEO Case No. 4G-300-0468-22)

On July 11, 2022, Mikell contacted the Postal Service's Equal Employment Opportunity ("EEO") office about her 2022 encounters with Burton. (Doc. 34-1 (First EEO Complaint) at 28-29.) On July 18, 2022, Mikell contacted the EEO counselor again about her emergency placement in June 2022. (*Id.* at 30-31.)

On October 27, 2022, Mikell filed a formal complaint of discrimination with the Postal Service's EEO office. (*Id.* at 7-23.) In her formal complaint, she asserted that James had discriminated against her based on her race, color, religion, and sex. (*Id.* at 7.) Mikell claimed that the discrimination by James began on April 15, 2022, and continued through her emergency placement on June 3, 2022. (*Id.* at 10–11.) She alleged that James discriminated against her on April 15, 2022 by

conducting an Initial Management Inquiry Process into her after she placed Burton on emergency placement. (*Id.* at 10.) She further alleged that, in May 2022, James ordered her to tell Burton to return to work and threatened her with discipline if she did not do so despite her concerns that Burton's presence threatened her safety. (*Id.*) Burton's behavior became "out of control" on May 27 (the second day after he returned to work), when he reached across Mikell's desk and shook his fist in her face. (*Id.*) But James did not respond to her concerns about Burton's behavior. (*Id.* at 10–11.) Mikell's formal complaint cited her June 2022 emergency placement as evidence of discrimination by both James and Miley. (*Id.* at 11.) Mikell's claims were accepted for investigation by the Postal Service's EEO office on November 17, 2022. (*Id.* at 52–54.)

On January 18, 2023, the Postal Service EEO investigator issued a report of investigation into Mikell's complaints. (*Id.* at 55–154.) The investigator contacted Mikell and her designated representative to complete an affidavit and provide documentation of compensatory damages. (*Id.* at 74.) But Mikell failed to provide the requested information. (*Id.* at 2-3, 55.)

8

On February 13, 2023, the Postal Service's EEO office dismissed Mikell's case due to her failure to cooperate. (*Id.* at 1-4.) The Postal Service's dismissal decision notified Mikell that, should she wish to challenge the decision, any civil action "must be filed" within 90 days. *Id.* at 4. She did not file a case in district court within 90 days. (*See* Mikell Br. at 12.)

### C.    Mikell's Second EEO Complaint (EEO Case No. 4G-320-0010-24)

On October 20, 2023 (well after the 90-day deadline to file a case in district court had passed), Mikell contacted the Postal Service's EEO office again about the same events from 2022 and a new allegation about Burton approaching her at an ATM. (Doc. 34-2 (Second EEO Complaint), at 1.) Mikell was issued a Notice of Right to File a Formal Complaint on January 22, 2024. (*Id.*)

On February 7, 2024, Mikell filed her second formal complaint related to her encounters with Burton. (*Id.* at 6-14; *see also* Doc. 33-1.) Again, she alleged that Burton threatened her on April 14; James directed her to place Burton on Emergency Placement on April 15; James conducted an Initial Management Inquiry Process into her; James

9

directed her to have Burton return to work and threatened her with EEO action if she did not; and after Burton returned to work, Burton became "out of control" and threatened her and James did not respond to her concerns about Burton. (Doc. 33-1.) Also, Mikell again cited the June 2022 emergency placement issued by James and Miley. (*Id.*) The only new allegations from her first EEO complaint were that: Burton had approached her at an ATM on September 25, 2023, and on January 25, 2024, she received a letter directing her to report to the Alma Post Office. *Id.*

On March 7, 2024, the Postal Service's EEO office dismissed Mikell's second formal complaint because her allegations were either untimely or not sufficiently severe nor pervasive to create a discriminatory hostile or abusive working environment. (Doc. 33-2.) The Postal Service issued her a right-to-sue letter. (*Id.*)

## II.    Proceedings and Dispositions Below

On June 4, 2024, Mikell filed a complaint against the Postmaster General under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Doc. 1.)

10

The Postmaster General moved to dismiss Mikell's complaint. (Doc. 9). Rather than filing a brief opposing the motion, Mikell filed an amended complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). (Doc. 15). The district court denied the Postmaster General's motion to dismiss as moot. (Doc. 18.)

The Postmaster General then moved to dismiss Mikell's amended complaint. (Doc. 20.) Mikell filed a response in opposition, and alternatively, moved for leave to amend her complaint a second time to include the notice of proposed removal issued by the Postal Service in October 2024. (Doc. 22; *id.* at 6 n.1.) The district court granted Mikell's request to amend her complaint again and denied the Postmaster General's motion to dismiss the first amended complaint as moot. (Doc. 32.)

Mikell filed a second amended complaint. (Doc. 33.) Mikell alleged one count of hostile work environment under Title VII and sought relief in the form of compensatory damages, retirement benefits, back pay, front pay, and attorneys' fees under 42 U.S.C. § 2000e-5(k). (*Id.* at 10–13.)

The Postmaster General filed a motion to dismiss the second amended complaint, arguing that Mikell improperly sought to raise untimely claims that had already lapsed and failed to state a claim for relief. (Doc. 34.) After briefing by the parties, the district court granted the motion to dismiss. (Doc. 42.)

In its decision, the district court explained that Mikell sought to establish a hostile work environment claim premised on two categories of conduct: (1) the 2022 events raised in the first EEO complaint, and (2) the later events that were added to the 2022 events in the second EEO complaint. (*Id.* at 11.) The district court concluded that because Mikell failed to file suit after she received her first right-to-sue notice, "Title VII's time-bar prevents her from asserting any claims based solely on allegations in the first EEO complaint." (*Id.* at 12.) The court further found that the 2022 events were insufficiently related to the timely acts alleged in the second EEO complaint such that they could not be considered in Mikell's hostile work environment claim. (*Id.* at 14–15.) Finally, the court found that Mikell failed to state an actionable hostile work environment claim based on the timely acts raised in her second amended complaint. (*Id.* at 15-17.) Accordingly, the court granted the

12

Postmaster General's motion to dismiss the second amended complaint. *Id.* at 18.

The district court entered judgment on October 1, 2025. (Doc. 43.) This timely appeal followed.

## III.  Standard of Review

This Court "review[s] *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Where the facts allow an inference of only the mere possibility of misconduct, they are insufficient to support a plausible claim. *Id.* at 679. "Stated differently, the factual allegations in the complaint must possess enough heft to set forth a plausible

13

entitlement to relief." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (internal punctuation and citations omitted).

"[T]his Court may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court." *Kernal Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012) (citation omitted).

## SUMMARY OF ARGUMENT

The District Court properly dismissed Mikell's sole claim of a hostile work environment under Title VII, and its decision should be affirmed. Most of Mikell's claims are untimely, and she has not plausibly alleged a hostile work environment claim based on her timely allegations.

If you only read Mikell's brief, you would never know that her hostile work environment claim is largely duplicative of an earlier, resolved EEO claim and is thus mostly untimely. In this case, Mikell alleges a hostile work environment mostly based on incidents from April through June 2022. But she already filed an EEO complaint based on those events. She received a right-to-sue letter. And yet she never filed suit within 90 days. She cannot resurrect untimely claims that have

14

lapsed by filing a largely duplicative claim after the 90-day deadline has passed. Otherwise, Title VII's time limitations would be meaningless.

Nor can this Court consider the untimely incidents because they are categorically different from the only timely, properly exhausted acts: a confrontation with another postal employee outside of work at an ATM and  letters instructing her to return to work with the Postal Service and proposing her removal. The ATM incident occurred over a year later off Postal premises and the letters were sent roughly two years later and involved different policies and different managers. And finally, the timely acts alone are insufficient to establish a hostile work environment because Mikell has not plausibly alleged that the harassment was severe and pervasive and was based on a protected characteristic.

Mikell's appeal necessarily fails. This Court should affirm the district court's dismissal of her complaint.

15

## ARGUMENT

**I.     The district court correctly found that the claims in Mikell's first EEO complaint are time-barred because she failed to file suit within 90 days and cannot revive the untimely claims by filing a duplicative EEO complaint.**

Before filing a Title VII claim, a federal employee must first exhaust her administrative remedies. *See Hogan v. Sec'y, U.S. Dep't of Veterans Affs.*, 121 F.4th 172, 173–74 (11th Cir. 2024); *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008).

Exhaustion of administrative remedies under Title VII has three components: a plaintiff must (1) contact an agency's EEO counselor within 45 days of the alleged discrimination; (2) file a complaint with the agency within 15 days of the notice of her right to do so; and (3) file suit within 90 days of the agency's final decision or after 180 days have elapsed from the filing of her EEO complaint if no final action has been taken. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.105(a)(1), 1614.106(b), 1614.407. As relevant here, "[t]o file a timely Title VII claim, the plaintiff must file suit within 90 days of receiving the EEOC's notice." *Henriquez v. Georgia Dep't of Revenue*, No. 21-12567, 2023 WL 4624473, at *4 (11th Cir. July 19, 2023); *see Duberry v. Postmaster Gen.*, 652 F. App'x 770, 772

16

(11th Cir. 2016) ("Upon receiving a right-to-sue letter from the Equal Employment Opportunity Commission ('EEOC'), the plaintiff must bring a civil action against the named respondent within 90 days by filing a complaint.") (citing 42 U.S.C. §§ 2000e-16(c), (d), 2000e-5(f)(1)).[7] It is the plaintiff's burden to establish that she has met the 90-day filing requirement. *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233-34 (11th Cir. 2002).

The Postal Service's EEO office issued Mikell her notice of her right to sue for her first EEO complaint on February 13, 2023.[8] That notice stated in bold print that any lawsuit based on the EEO complaint had to

---

[7]     "[F]or purposes of discrimination claims filed by federal employees, a complaint filed with an agency's EEO office is the equivalent of an EEOC charge." *Ferguson v. Runyon,* 116 F.3d 1482 (7th Cir. 1997); *see Mathirampuzha v. Potter,* 548 F.3d 70, 75 (2d Cir. 2008) (noting that the requirement that "a federal employee bring a complaint to his or her EEO for resolution, *see* 29 C.F.R. § 1614.105" is "analogous to the requirement that a private sector employee first bring a complaint to the attention of the [EEOC] for resolution.").

[8]     This Court presumes the notice was received within three days of issuance. *Robbins v. Vonage Bus., Inc.*, 819 F. App'x 863, 867 (11th Cir. 2020). Thus, the Court may presume that Mikell received the EEO decision dismissing her first EEO complaint on or about February 16, 2023—several months before she filed her second EEO complaint. Mikell has never alleged that she did not receive the decision.

be filed with 90 days of receipt of the notice. Her deadline to file a civil action related to the events in her first EEO complaint was May 17, 2023. But Mikell waited over a year until June 2024 to file suit in district court after receiving a notice of right to sue in her second EEO complaint. That is well beyond the 90-day time limit that applies under Title VII. Even Mikell acknowledges that her allegations from her first EEO complaint by themselves are untimely. (Mikell Br. 12.)[9]

Instead, Mikell attempts to evade the 90-day deadline by suggesting that her second EEO complaint (which was timely filed within 90 days of the right-to-sue letter) revived all of her claims as they all are part of the same hostile working environment dating back to April 14, 2022. (Mikell Br. 8-12). Not so.

An employee cannot evade the 90-day filing requirement by filing a duplicative claim of discrimination after the 90-day deadline has passed. *Dowdell v. Sunshine Biscuits, Inc.*, 90 F.R.D. 107, 115-16 (M.D. Ga. 1981),

---

[9] Although the 90-day limitations period applicable to Title VII claims can be subject to equitable tolling in an appropriate case, *see Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000), Mikell has never argued or alleged any facts to show that equitable tolling is warranted.

*aff'd* 673 F.2d 1343 (11th Cir. 1982) ("a Title VII plaintiff cannot be permitted to extend [the 90-day] period by repeatedly filing broad, duplicative charges with the EEOC and obtaining multiple right to sue letters"); *see Washington v. Washington Metro. Area Transit Auth.*, No. 21-7055, 2022 WL 2387525, at \*2 (D.C. Cir. July 1, 2022) ("It is widely accepted that a plaintiff cannot revive claims stemming from an expired administrative charge in a ripe charge."); *King v. Ford Motor Co.*, 872 F.3d 833 (7th Cir. 2017) (employee's filing of new EEOC claim did not revive prior claims she filed that were time-barred because she filed them more than 90 days after receiving EEOC right-to-sue letter); *Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387, 391 (1st Cir. 2014) (plaintiff's Title VII claim filed after the 90-day deadline could not be "resuscitated by the filing of a second administrative charge"); *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1186 (10th Cir. 2006) ("If the claimant fails to file suit within the ninety-day window, the lapsed claims are not revived by including them in a second EEOC charge and restarting the process."); *Spears v. Mo. Dep't of Corrs. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000) (barring plaintiff from filing suit based on second EEOC charge that replicated an untimely charge); *Lo v. Pan*

19

*Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) ("We hold that whether the present action is time barred must be determined with reference to only the first Notice of Right to Sue. Otherwise, the time limitations of 42 U.S.C. § 2000e-5(f)(1) would be meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased.").

To be sure, the Supreme Court has held that if at least one act contributing to the hostile environment occurred within the complaint period, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). But the Court in *Morgan* was addressing a different deadline: the timeliness of charges filed with employers under 42 U.S.C. § 2000e-5(e)(1); *see also* 29 C.F.R. § 1614.105(a)(1) (requiring federal employees to contact agencies within forty-five days of alleged discriminatory acts). Nowhere did the Court in *Morgan* indicate that a hostile work environment claim that is time-barred because of the plaintiff's failure to file suit within 90-days after receiving a previous right-to-sue notice can be revived by filing a new EEO complaint. That is because "[t]he nature of the plaintiff's claim is

20

not relevant to the court's statute of limitations decision." *Price v. Greenspan*, 374 F. Supp. 2d 177, 185 (D.D.C. 2005), *aff'd sub nom. Price v. Bernanke*, 470 F.3d 384 (D.C. Cir. 2006). "The 90 day period does not relate to how quickly an employee must identify a discriminatory or retaliatory practice, but simply how quickly a complainant must get into federal court to assert his rights after losing in the administrative process." *Id.*

Courts have repeatedly found that a plaintiff may not rely on the continuing violation theory to revive time-barred claims and thus cannot resurrect an expired EEO complaint by restarting the litigation process based on a different EEOC charge. *See Loubriel v. Fondo del Seguro del Estado,* 694 F.3d 139, 144 (1st Cir. 2012) ("the existence of a continuing violation does not relax the requirement that a plaintiff file her judicial action within 90 days of the receipt of the EEOC's right-to-sue notice"); *Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 461 (6th Cir. 2001) ("The continuing violation doctrine . . . does not relieve a plaintiff of the need to file an action within 90 days of receiving the right-to-sue letter."); *Brown v. Hartshorne Pub. Sch. Dist. No. 1,* 926 F.2d 959, 962 (10th Cir. 1991) ("[T]he continuing violation theory does not eliminate

21

the requirement that a plaintiff file a judicial action within ninety days of receipt of notice of the right-to-sue."); *Gibbs v. Gen. Motors Corp.,* 104 F. App'x. 580, 582 (7th Cir. 2004) (finding that plaintiff "cannot avail herself of the continuing-violation doctrine because she obviously believed that the time-barred acts were discriminatory when she filed EEOC charges in early 2001"). If a plaintiff could refile the same complaint for the same alleged incidents, while merely tacking on a handful of additional allegations alleging the same continuous hostile work environment, then there would be no adverse consequence for an employee who fails to file suit within 90 days of receiving a right-to-sue notice from the agency's EEO office or the EEOC. Title VII's time limitations would be meaningless. *See Lo*, 787 F.2d at 828.

Therefore, to the extent that the claims in Mikell's second EEO complaint are identical to those in her first EEO complaint, such claims are time-barred. Here, the first EEO complaint and second EEO complaint both contain identical allegations regarding the incidents occurring between April and June 2022. In both EEO complaints, Mikell alleged that Burton threatened her on April 14; James directed her to place Burton on Emergency Placement on April 15; James conducted an

22

Initial Management Inquiry Process into her; James directed her to have Burton return to work and threatened her with EEO action if she did not; and after he returned to work in May 2022, Burton became "out of control" and threatened her, and James did not respond to her concerns about Burton, and she was placed on emergency placement in June 2022. These allegations were contained on her first EEO complaint for which she received a right-to-sue letter on February 13, 2023, notifying her that a suit "must be filed" within 90 days. She did not file suit within 90 days and thus cannot assert any claims based solely on allegations in the first EEO complaint. *See Johnson v. Chicago Bd. of Educ.*, No. 05 C 4294, 2007 WL 317030, at \*5 (N.D. Ill. Jan. 31, 2007) ("[O]nce the 90–day period expires, a court is precluded from adjudicating any allegations contained in a previous charge.").

II. **The district court correctly found that the untimely acts raised in Mikell's second EEO complaint are not sufficiently related to the timely acts to form a claim for hostile work environment because they occurred over a year apart and involve different supervisors and different policies.**

Mikell also argues that her claims consist of a continuous hostile work environment dating back to April 14, 2022, such that she can tack

23

on those untimely claims from her first EEO complaint onto her timely claims from 2023 and 2024 in her second EEO complaint, relying on this Court's ruling in *Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007).

This Court in *Chambless* determined that "[w]here the discrete act is sufficiently related to a hostile work environment claim so that it may be fairly considered part of the same claim, it can form the basis for consideration of untimely, non-discrete acts that are part of the same claim." 481 F.3d at 1350. "The pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim." *Id.* "[A]cts may be part of the same unlawful employment practice if the 'pre- and post-limitations period incidents involve the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" *Moore v. San Carlos Park Fire Prot. & Rescue*, 808 F. App'x 789, 797 (11th Cir. 2020) (quoting *Morgan*, 536 U.S. at 122).[10]

---

[10]    A year after this Court's opinion in *Chambless*, a different Eleventh Circuit panel ruled a "district court properly found" that some of the plaintiff's allegations "constitute discrete acts that must be challenged as separate statutory discrimination and retaliation claims." *McCann v.*

The time-barred allegations in Mikell's first EEO complaint include her allegations involving Burton and James in April and May 2022 (Burton threatening Mikell, James' decision to initiate an Initial Management Inquiry Process into Mikell and his order for Mikell to reinstate Burton, Burton threatening Mikell once he returned to work, and James' failure to immediately respond to the threats) as well as her emergency placement in June 2022. The emergency placement is a discrete act and cannot be considered because it is untimely. *See Morgan,*

*Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008). "These cannot be brought under a hostile work environment claim that centers on 'discriminatory intimidation, ridicule, and insult.'" *Id.* (citing *Morgan*, 536 U.S. at 116); *see also Freeman v. City Of Riverdale*, 330 F. App'x 863, 866 (11th Cir. 2009) (finding plaintiff could not establish a hostile work environment by reference to his 2001 or 2003 terminations "because they were discrete acts that were required to be challenged separately") (citing *McCann*, 526 F.3d at 1379). District courts within this Circuit have noted the apparent tension between the *Chambless* and *McCann* holdings. *See D'Franco v. Fontainebleau Fla. Hotel, LLC,* No. 1:23-CV-22476-RAR, 2025 WL 906129, at *7 (S.D. Fla. Mar. 7, 2025), report and recommendation adopted, No. 23-CV-22476-RAR, 2025 WL 901371 (S.D. Fla. Mar. 25, 2025); *Caldwell v. Kimberly-Clark USA, LLC*, 783 F. Supp. 3d 1367, 1388 (S.D. Ala. 2024); *but see Dawkins v. Fulton Cnty. Gov't, State of Ga.*, No. 10-CV-1718, 2012 WL 12892184, at *2–3 (N.D. Ga. Mar. 14, 2012) (finding no split in authority). This Court need not decide whether *McCann* or *Chambless* controls because Mikell cannot satisfy either. As discussed below, the timely acts are not sufficiently related to the untimely allegations that she was subjected to a hostile work environment.

25

536 U.S. at 113–14 (only untimely non-discrete acts can be considered). And even if the other allegations from 2022 involving non-discrete acts are not barred for failure to timely file suit, they still cannot be considered because they are not sufficiently related to the timely acts: the September 2023 encounter with Burton at an ATM outside of work and the January 2024 letter directing Mikell to return work.[11]

First, as explained below, the encounter between Mikell and Burton (a co-worker, not a supervisor) outside of work at an ATM is not basis for a hostile work environment claim. And, in any event, it is still not sufficiently related to the 2022 events. The only connection is the identity of the alleged perpetrator (Burton). This encounter allegedly occurred off Postal premises over a year after the May 2022 incident. (Doc. 33-1 at 4) Mikell does not allege any details of this interaction, such as the content, motivation, delivery, or how it is connected to her 2022 interactions with Burton in the workplace in her role as his supervisor. The ATM incident

---

[11]    These are the only timely allegations in Mikell's second EEO complaint that are not duplicative of her allegations in the first EEO complaint.

was far removed in time and place from her earlier interactions with Burton.

Second, the 2024 letters directing her to return to work and later proposing her removal for lack of attendance happened roughly two years later after the untimely allegations and involved different managers. Johnson issued the 2024 letters whereas James and Miley were the managers involved in the 2022 allegations. (Doc. 33 ¶¶ 12, 20, 24.) The 2024 letters were also issued based on different policies—for Mikell's failure to report to work. That was indisputably not the basis for her emergency placement in June 2022.

The other incidents from April to June 2022, including the Initial Management Inquiry Process initiated by James and James's order for Mikell to reinstate Burton and his failure to timely respond to Burton's threats, are similarly distinct acts involving a different supervisor occurring two years apart. *See Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 995 (11th Cir. 2025) (plaintiff's failure to promote and denial of incentive pay claims were not "'sufficiently related'" to his claims based on augmentation shift assignments because "[e]ach was a distinct

employment action, that occurred only once, months apart, based on different policies and managers" (citations omitted)).

In sum, *Chambless* permits discrete acts to be considered in conjunction with untimely non-discrete acts for a hostile work environment claim if they are "sufficiently related," which requires "circumstances" suggesting that the discrete acts reflected discriminatory "intimidation, ridicule and insult." 481 F.3d at 1350. Mikell comes nowhere close to making this showing. Her only timely and properly exhausted acts are the ATM encounter and letters directing her to return to work and proposing her removal for lack of attendance. But those acts are not sufficiently related to the 2022 allegations nor do they reflect "the same type of intimidation, ridicule and insult." *Id.* Therefore, the district court correctly declined to consider them as part of Mikell's hostile work environment claim.

III. **The district court correctly found that the timely acts raised in Mikell's Second Amended Complaint do not state a Hostile Work Environment Claim because she does not plausibly suggest that the alleged harassment was severe and pervasive or based on her race or gender.**

Mikell must demonstrate the following elements to establish a hostile work environment based on race/gender:

28

> (1) she belongs to a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her race, (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for the environment under a theory of vicarious or direct liability.

*Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018).

"The 'severe or pervasive' requirement entails both an objective component—namely, that a reasonable person would find the environment hostile or abusive—and a subjective component." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1302 (11th Cir. 2023). In assessing the objective component, the court evaluates "'all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Other than being a member of a protected class, Mikell fails to plausibly allege a hostile work environment claim.

As discussed, the only timely allegations that can be considered as part of Mikell's hostile work environment claim are: the September 2023

29

encounter with Burton at an ATM and the 2024 letters directing her to return to work and proposing her removal for lack of attendance.

In her Second Amended Complaint, Mikell makes almost no factual allegations about the offsite ATM incident. She does not even claim that Burton did anything other than vaguely allege that he "confronted" her. It's unclear how this could constitute a hostile work environment, especially where Mikell does not allege the event occurred at the workplace or during work hours, had any connection to management or that management was even aware of the incident, or that it involved a protected characteristic.

First, the ATM incident did not occur on Postal premises. Nor does Mikell allege that Burton was on-duty at the time. "Conduct wholly outside of the workplace has been held insufficient to form the basis of a hostile work environment claim." *Whipple v. Reed Eye Assocs.*, 524 F. Supp. 3d 76, 90 (W.D.N.Y. 2021) (citation omitted); *see Duggins v. Steak 'N Shake, Inc.*, 3 F. App'x 302, 311 (6th Cir. 2001) ("[C]ourts have held that generally an employer is not liable for the harassment or other unlawful conduct perpetrated by a non-supervisory employee after work hours and away from the workplace setting."); *Candelore v. Clark Cnty.*

30

*Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) (holding that conduct outside the workplace has no legal bearing on showing the existence of hostile work environment); *Paul v. Postgraduate Ctr. for Mental Health,* 97 F. Supp. 3d 141, 175 (E.D.N.Y. 2015) ("Generally, an employer is not liable as a matter of law for harassment resulting from nonwork-related, off-duty interactions between co-employees because those actions are not part of the work environment.") (citation omitted); *Bergbauer v. Mabus,* 934 F.Supp.2d 55, 78 (D.D.C. 2013) (summary judgment granted on hostile work environment claim where the plaintiff's supervisor had touched plaintiff sexually on one occasion outside of work). Similarly, this Court held that expressing a racial epithet "on one occasion by one co-worker away from the workplace" was "nowhere near enough" to "permeate the workplace with discriminatory intimidation, ridicule, and insult and to alter the conditions of the victim's employment and create an abusive working environment" to create a racially hostile environment. *Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008).

Second, other than her blanket statement that she does not "fit in" with Burton and James and that they prefer to "stick to their own kind,"

31

Mikell does not allege that that the ATM encounter occurred due to her race or gender, had any connection to James, her Postal supervisors, or her workplace in general, or that Burton made any racially derogatory marks to her. *See Harris*, 82 F.4th at 1304 ("[F]ederal law doesn't prohibit hostility in the workplace—only hostility caused by impermissible discrimination."); *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 836 (11th Cir. 2021) (explaining that hostile-work-environment claims require that the protected characteristic to have been a "motivating factor" in the employment action). This isolated incident is far less severe than the use of a racial epithet in *Butler* and does not even come remotely close to plausibly stating a hostile work environment claim. *See Mosley v. MeriStart Mgmt. Co.*, 137 F. App'x 248, 252 (11th Cir. 2005) ("Isolated or sporadic incidents of harassment do not satisfy the 'severe or pervasive' standard of a hostile work environment claim." (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 757 (1998))).

Third, the ATM incident involved an employee who did not supervise Mikell. She offers no reason why the Postal Service should be liable for Burton's conduct under the circumstances. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002) ("Where

32

the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action. A victim of coworker harassment must show either actual knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer.").

This leaves the 2024 letters directing Mikell to return to work and later proposing her removal for failure to do so. Mikell argues that threats of termination are adverse employment actions and sufficient to save her claims from dismissal. (Mikell Br. at 16-17.). While a termination is an adverse employment action, *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008), it is also a "discrete act[]."*Morgan*, 536 U.S. at 115-16 (noting "discrete acts" include "termination, failure to promote, denial of transfer, or refusal to hire," and any other "adverse employment decision). And "[d]iscrete acts cannot alone form the basis of a hostile work environment claim." *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012); *see Brannon v. Sec'y, Dep't of Veterans Affs.*, No. 22-10838, 2023 WL 1161129, at *5 (11th Cir. Jan. 31, 2023) ("Hostile work environment claims do not address discrete, unpleasant acts."); *Moore*,

33

808 F. App'x at 797 (finding that adverse actions of "demotion, suspension, and constructive discharge . . . [w]hile timely . . . these adverse employment actions alone do not demonstrate a hostile work environment"). The 2024 letters are discrete acts that do not constitute a hostile work environment. *See Williams v. Paulson,* No. 1:06-CV-0876-CC-AJB, 2007 WL 9652983, at \*16 (N.D. Ga. Dec. 24, 2007), report and recommendation adopted, No. 1:06-CV-0876-CC, 2008 WL 11336482 (N.D. Ga. Jan. 16, 2008), *aff'd sub nom. Williams v. Geithner*, 327 F. App'x 175 (11th Cir. 2009) (suspension, performance evaluation, and counseling letters were discrete acts); *Porter v. California Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (threat of disciplinary action was a discrete act); *Miller v. N.H. Dep't of Corr.,* 296 F.3d 18, 21–22 (1st Cir. 2002) (a letter of warning was a discrete act).

The 2024 letters do not provide a basis for a hostile work environment claim. But even if they did, they fall far short of the severe and pervasive conduct required for a hostile work environment, and Mikell does not connect them to a protected characteristic. The letter directing her to return to work and the letter later proposing her removal occurred only twice, several months apart. Mikell does not allege any

34

verbal or physical abuse or harassment in the interim between them. Mikell also does not connect either to her race or gender. In fact, her complaint does not even reference the supervisor's race or gender (Mikell's Second Amended Complaint references James' race but he did not issue the 2024 letters). The conduct alleged does not even remotely resemble the type of conduct giving rise to a hostile work environment claim. *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) ("All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment." (citation omitted)), *overruled on other grounds as recognized by Crawford*, 529 F.3d 961; *Brannon*, 2023 WL 1161129, at *5 (performance improvement plan and proposed removal for not meeting performance improvement plan's standards were not a hostile work environment).

Accordingly, the district court correctly determined that Mikell had not adequately pled a hostile work environment claim.

# CONCLUSION

The judgment below should be affirmed.

Respectfully submitted,

MARGARET E. HEAP
UNITED STATES ATTORNEY

/s/ Channell V. Singh
Channell V. Singh
Assistant United States Attorney
Georgia Bar No. 216540
*channell.singh@usdoj.gov*

/s/ Kyle P. McCauley
Kyle P. McCauley
Attorney, United States Postal Service
D.C. Bar No. 1738739
*kyle.p.mccauley@usps.gov*

36

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 7,216 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief was filed today through this Court's ECF system, and thereby served on counsel of record for Wendy Mikell, Brent J. Savage and Matthew R. Bradley, at their Court-registered email addresses, pursuant to Fed. R. App. P. 25(c)(1)(C) and 25(c)(2), and 11th Cir. R. 25-3(a).

This 18th day of March, 2026.

Respectfully submitted,

MARGARET E. HEAP
UNITED STATES ATTORNEY

*/s/ Channell V. Singh*
Channell V. Singh
Assistant United States Attorney
Georgia Bar No. 216540

37

*channell.singh@usdoj.gov*

Post Office Box 8970
Savannah, Georgia 31412
Telephone Number: 912-652-4422